## STATE v. JOHN ADAMS.

Court of Quarter Sessions.  Sussex.  April 30, 1804.

*Rodney's Notes.*

*Vandyke* [for State].  *Bayard, Horsey, Robinson* [for defendant].

*Vandyke* read indictment and administration account, rule of reference etc.  Report dated November 4, 1802.

Joseph Haslet, one of the referees.  In November, 1802, at Concord, in Broad Creek, at A. Phelps', Adams produced a book which contained a considerable account against the estate of George Adams, which I believe he alleged was a book of original entries, but [I] will not be positive I saw him sworn.  Mr. Horsey was counsel for John Adams, and Mr. Wilson for plaintiff.  This book now produced looks like the book, though I am not certain it is the same.  The watermarks in this book do not appear to be the same.  On that they appeared to be 1796.  No marks appear on this, and therefore I do not think it is the same.  Referees were sworn before they entered on the business—by Mr. Cooper, I think.  Witnesses were produced who proved John Adams had labored for his father twelve or fifteen years.

William B. Cooper, Esq.  I attended the reference at the request of S. Griffith, Esq.  I was called on to administer an oath and did administer it to John Adams relative to his book and accounts.  I administered the oath about candlelight.  I am not certain he was sworn on the Bible or Testament.  [I] did not look into it.  I swore the referees in one case, and, I believe, in this, before Adams was sworn.  I have frequently been called to swear referees [and] believe it has been the practice.

John Hooper, Esq.  I acted as referee.  On the first day Mr. Haslet and Mitchell were absent; C. Jacobs, William Vaughn and myself were present.  I think we three were qualified by Colonel Kollock.  Adams was sworn by William Cooper, Esq., on a Testament, touching the accounts, books, etc.  I have frequently acted as a referee and have always seen that to be done.  Where I

have had any knowledge on the subject, it has been the practice. Watermarks appeared on the paper of 1796, and charges appeared of the date of 1784, [and] 1785. The maker's name appeared near where it was doubled. There does not appear to be so much paper, nor the watermarks in this book which were in the other.

Curtis Jacobs. After John Hooper, William Vaughn and myself met, we were qualified and proceeded. It is common for the justices to administer oaths before referees to witnesses.

Jesse Green. Mr. Cooper administered the oath to John Adams. I saw the book at the time and discovered the watermark, 1796, I. Wickware, and Brittania on the other side. I had paper of that mark to sell. I believe this book to be the same, though there is not so much paper in it. It has been the custom for justices to qualify witnesses in all instances that I have known. George Adams died in January, 1799.

John Rupel, sixty-seven years old. It has been the custom and the common practice through the county, ever since my knowledge, for justices of the peace to swear witnesses before arbitrators.

Jacob Harrard, sixty-two years old. It has always been the practice etc.

William Carlisle, sixty-three years old. It has been etc. as above.

Elijah Adams has lived better than thirty years in the county. It has been the custom etc.

*Bayard* for defendant. We shall endeavor to prove the account true.

Elisha Evans. George Adams told me John's uncle had offered him £75 himself had given him £60, but he should have to give him £75 or John would leave him. He worked with his father till his death.

John Evans. John managed his father's farm ever since I knew him.

William Huffington. I have known John eighteen years, always worked with his father till George Adams died. Never heard anything against his character till now etc.

John Willis. Always worked for his father, was worth £50 per year, is forty-six or forty-seven years old, has not been of age twenty years.

*Vandyke,* Attorney General. [First question is] whether proceeding and the oath stated in the indictment actually took place

as stated in indictment. Second, whether that oath, if taken as above, is perjury according to the principles of law. 1 Hawk.P. C. 318, perjury; 4 Bl.Comm. 137, description of perjury. The book now produced all the referees say is either not the same, or if the same, has been so mutilated and garbled and leaves taken out as that they do not know it again.

*Robinson* for defendant. First, the oath is not wilful perjury as stated. Second, that, if wilful, the person who administered it was not competent to administer an oath so as to make it perjury. 3 Burr. 228, every oath must be given by Act of Parliament or by common law time out of mind. Therefore the Attorney General must show the justices had before referees power to administer an oath. 2 Del.Laws 769, any justice authorized to swear auditors etc. 1 Hawk.P.C. 321, if oath is not taken by a person authorized by law, it is not sufficient to convict of perjury. 2 Hawk.P.C. 619, 620, it is necessary to produce the original indenture on an indictment for counterfeiting the coin of the nation.

*Horsey* for defendant. Oath must be wilful and false, with deliberation etc., by a person duly authorized, in relation to the matter in dispute and in the course of judicial proceedings. Arbitration not such a judicial proceeding as that the criminal could be convicted. His act was a just one. To convict of perjury requires the oath of at least two concurring witnesses. The watermark is not evidence of itself to convict of perjury, it being only the private mark of the paper maker. A record only is evidence of itself. It should have been stated in the indictment that arbitrators were qualified, or they were not a tribunal before which etc.

*Bayard* for defendant. First, whether the entries were true —[it] is affirmed by four witnesses. Second, whether they were made at the time the account is dated. Third, whether they were made in his father's lifetime. The first and third points are of no consequence. The second he might have understood as to the time the services were performed. The book is acknowledged to be the same as to the account, but they say it is mutilated. 1 Hawk.P.C. 325, one witness not enough to convict, [there] should be two. 2 Del.Laws 1042, justices authorized to administer oaths to referees.

*Vandyke* in conclusion. The defense set up is of two parts. First, that in fact no perjury has been committed. Second, if the fact is made out, yet the indictment cannot be supported in law. [Question is] whether the justice had power to administer the oath. Commission read.

PER CURIAM. In this action for perjury laid in the indictment to be committed before William B. Cooper, a justice, in an action before referees, it must be proved that the answers were given falsely, wilfully etc. Three grounds of defense set up. First, that the oath administered before referees by a justice is not such an oath as will convict the defendant of perjury. Second, watermark alone not sufficient to convict. Third, that the action was true. But if you are of opinion the oath was administered by a person having lawful authority, and that he swore falsely etc., you ought to convict. If you are not fully satisfied of the above you will acquit. As to the first point of defense, the Court, or a majority, are of opinion that the oath was not in law such an oath as should convict a party of perjury.

Verdict, not guilty.